OFFICE OF DISCIPLINARY COUNSEL *v.* BURKHART.

[Cite as *Disciplinary Counsel v. Burkhart* (1996), 75 Ohio St.3d 188.]

(No. 95-1196—Submitted November 7, 1995—Decided March 5, 1996.)

190

*Geoffrey Stern,* Disciplinary Counsel, and *Alvin E. Mathews,* Assistant Disciplinary Counsel, for relator.

*Charles W. Kettlewell,* for respondent.

*Per Curiam.* Upon review of the record, we agree with the board's findings that respondent violated DR 1–102(A)(4) and (6), as well with its conclusion that respondent did not violate DR 1–102(A)(3). We, therefore, reject the argument raised in relator's objections to the board's report—that respondent's theft in office convictions involved "moral turpitude."

Acts of moral turpitude, although not subject to exact definition, *Cincinnati Bar Assn. v. Shott* (1967), 10 Ohio St.2d 117, 130, 39 O.O.2d 110, 118, 226 N.E.2d 724, 733, are characterized by " 'baseness, vileness, or the depravity in private and social duties which man owes to his fellow man, or to society in general * * *.' " *State v. Adkins* (1973), 40 Ohio App.2d 473, 475, 69 O.O.2d 416, 417, 320

N.E.2d 308, 310. Such acts must be measured against the accepted standards of morality, honesty, and justice prevailing upon the community's collective conscience, as distilled by a similarly principled judiciary. Accord *In re McGrath* (1982) 98 Wash.2d 337, 342, 655 P.2d 232, 234. And, where it is not a statutorily defined element of the charged offense, moral turpitude is a separate issue from the finding of guilt in a criminal proceeding. *Id.* at 341–342, 655 P.2d at 234. Thus, proof of a criminal conviction is generally not conclusive of the issue of moral turpitude, which requires consideration of all the circumstances surrounding the illegal conduct. *Disciplinary Counsel v. King* (1988), 37 Ohio St.3d 77, 78, 523 N.E.2d 857, 859.

For these reasons, we cannot apply the *per se* rule relator urges and declare respondent in violation of DR 1–102(A)(3) simply because we have done so with respect to other attorneys convicted of felony theft offenses. See, *e.g., Disciplinary Counsel v. Pizzedaz* (1994), 68 Ohio St.3d 486, 628 N.E.2d 1359 (attorney committed five counts of theft in office, in violation of R.C. 2921.41, and one count of tampering with records, in violation of R.C. 2913.42), and *Disciplinary Counsel v. Koury* (1990), 50 Ohio St.3d 150, 552 N.E.2d 941 (attorney convicted of grand theft, in violation of R.C. 2913.02[A][2] ). Rather, where moral turpitude is disputed, an independent review of the circumstances underlying criminal convictions is necessary to determine if they manifest the requisite lack of social conscience and depravity beyond any established criminal intent. We have conducted that review in this case and agree with the board that respondent's crimes were not motivated by an unmitigated interest in personal financial gain at the expense of public or client coffers, which has been the hallmark of most theft-related DR 1–102(A)(3) violations in the past. Accordingly, relator's objection to the board's failure to find this misconduct is overruled.

Relator also objects to the sanction recommended by the board, arguing that respondent should receive an indefinite suspension with no credit for the suspension imposed upon her felony convictions because (1) she is still on probation for her offenses, and (2) she has not yet made complete restitution. We agree and respondent concedes that she should serve out her probation period, which she anticipates to end on or about November 4, 1996, and make full restitution, including court costs, prior to reentering the practice of law. With respect to the imposition of an indefinite suspension, however, we are confident that respondent will never repeat her crimes and, like the board, consider further review of her character and professional competence unnecessary.

Accordingly, we order that respondent be suspended from the practice of law in Ohio for a period of two years, and we grant her credit for the suspension of her license on November 12, 1993; however, respondent must complete her probation and pay full restitution, including court costs and interest at the

judgment rate, prior to her reinstatement, and in no case shall she be reinstated prior to November 1, 1996. Costs taxed to respondent.

*Judgment accordingly.*

Douglas, Wright, Resnick and Pfeifer, JJ., concur.

Moyer, C.J., F.E. Sweeney and Cook, JJ., dissent.

Cook, J., dissenting. With all due respect, I cannot agree with the majority's conclusion that respondent's conduct did not violate DR 1–102(A)(3). The "Victim's Statement" in respondent's presentence report shows that in addition to receiving $1,193.41 from the false travel vouchers and $58 from state postage use, respondent charged $2,560.72 in long distance telephone calls and accepted $4,479.51 from falsifying overtime hours on time sheets.

The respondent not only is charged with the responsibility to conduct herself in accordance with the high ideals of our profession, but also, as a public official, she had the additional trust imposed upon her by virtue of that office. Her conduct, therefore, ought to be judged to be doubly unbefitting. No indulgence by the disciplinary system is warranted and I would indefinitely suspend the respondent with no credit for time served and condition reinstatement upon the payment of full restitution, including court costs and interest at the judgment rate.

Moyer, C.J., and F.E. Sweeney, J., concur in the foregoing dissenting opinion.