**[This opinion has been published in *Ohio Official Reports* at 75 Ohio St.3d 188.]**

OFFICE OF DISCIPLINARY COUNSEL *v.* BURKHART.

[Cite as *Disciplinary Counsel v. Burkhart*, 1996-Ohio-121.]

*Attorney at law—Misconduct—Two-year suspension with credit for time served from November 12, 1993, with conditions for reinstatement—Convictions for theft in office and receiving stolen property.*

(No. 95-1196—Submitted November 7, 1995—Decided March 5, 1996.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and Discipline of the Supreme Court, No. 93-74.

_____

{¶ 1} In a complaint filed on December 6, 1993, relator, Office of the Disciplinary Counsel, charged respondent, Gladys F. Burkhart of Crestline, Ohio, Attorney Registration No. 0022735, with one count of misconduct involving violations of DR 1-102(A)(3) (illegal conduct involving moral turpitude), 1-102(A)(4) (conduct involving fraud, deceit, dishonesty, or misrepresentation) and 1-102(A)(6) (conduct that adversely reflects on attorney's fitness to practice law). A panel of the Board of Commissioners on Grievances and Discipline of the Supreme Court ("board") heard the matter on May 10, 1995.

{¶ 2} The parties stipulated at the hearing to the facts underlying the charged misconduct and to respondent's violation of DR 1-102(A)(4) and (6), in part, as follows:

"1. Respondent *** was admitted to practice law in the State of Ohio on May 8, 1967. Respondent is subject to the Code of Professional Responsibility and the Rules for the Government of the Bar of Ohio.

"2. On November 12, 1993, pursuant to Gov.Bar R. V, §5(A)(2), the Supreme Court of Ohio indefinitely suspended Respondent from the practice of law for her felony convictions. ***.

"3. In July of 1979, Respondent was appointed Secretary of the Ohio Optical Dispensers Board, an administrative board functioning under the statutes of the State of Ohio. Respondent has also maintained a part-time legal practice in Crestline, Ohio.

"***

"5. On or about September 30, 1993, a jury found Respondent guilty on two counts of Theft in Office in violation of O.R.C. §2921.41, felonies of the third degree; and a single count of Receiving Stolen Property in violation of O.R.C. §2913.51, a felony of the fourth degree. ***

"6. On November 4, 1993, Respondent was sentenced to eighteen month sentences on both the Theft in Office counts and a one-year sentence on the Receiving Stolen Property count [said sentences to run concurrently]. The court suspended the prison sentence, and Respondent was placed on probation for three (3) years. Respondent was required to, *inter alia*, pay restitution of $8,291.64 and a fine of $1,000.00, as conditions of her probation. ***

"7. Respondent acknowledges that her conduct violated DR 1-102(A)(4) *** and, DR 1-102(A)(6) ***."

{¶ 3} Respondent was convicted of theft in office and receiving stolen property because while serving as Executive Secretary or Executive Director of the Ohio Optical Dispensers Board ("OODB"), she made personal telephone calls at public expense, she falsified travel vouchers, and she took a typewriter and answering machine for her personal home use. Respondent admitted her wrongdoing and expressed her remorse at the hearing. She explained that she had not been able to obtain approval of legitimate OODB expenses for various administrative reasons and had falsified the travel vouchers to receive the reimbursement to which she considered herself entitled. She assured the panel that she did not personally profit from the falsified vouchers. Respondent also explained that she had taken the office equipment only after it had been replaced

2

by OODB, and she had used it, at least in part, to conduct OODB business from her home.  Respondent has since returned the office equipment to OODB.

{¶ 4} The panel found that respondent violated DR 1-102(A)(4) and (6), but did not find a violation of DR 1-102(A)(3).  In response to relator's contention that a theft in office conviction necessarily constitutes illegal conduct involving moral turpitude, the panel determined that respondent's offenses were committed, in the main, to receive reimbursement for expenses paid on OODB's behalf and that this circumstance redeemed what might otherwise be considered a base, vile or depraved act in violation of DR 1-102(A)(3).

{¶ 5} In recommending a sanction for respondent's misconduct, the panel considered the testimony of five character witnesses and thirty-two letters from respondent's friends, professional acquaintances, and other members of her community.  All expressed their confidence in her integrity apart from the acts leading to her felony convictions.  The panel also considered respondent's undisputed competence as a practitioner, her prior unblemished legal career, and the devastating effect of the convictions on her personal life.

{¶ 6} Relator suggested that respondent receive an indefinite suspension; however, the panel saw no reason to conduct the character and competence review required to gain reinstatement from an indefinite suspension.  The panel instead recommended the sanction suggested by respondent—a two-year suspension from the practice of law with credit for the period of respondent's suspension that began on November 12, 1993.

{¶ 7} The board adopted the panel's report, including its findings of fact, conclusions of law and recommendation.

———————————

*Geoffrey Stern*, Disciplinary Counsel, and *Alvin E. Mathews*, Assistant Disciplinary Counsel, for relator.

*Charles W. Kettlewell*, for respondent.

_____

*Per Curiam*.

**{¶ 8}** Upon review of the record, we agree with the board's findings that respondent violated DR 1-102(A)(4) and (6), as well with its conclusion that respondent did not violate DR 1-102(A)(3). We, therefore, reject the argument raised in relator's objections to the board's report--that respondent's theft in office convictions involved "moral turpitude."

**{¶ 9}** Acts of moral turpitude, although not subject to exact definition, *Cincinnati Bar Assn. v. Shott* (1967), 10 Ohio St.2d. 117, 130, 39 O.O.2d 110, 118, 226 N.E.2d 724, 733, are characterized by "'baseness, vileness, or the depravity in private and social duties which man owes to his fellow man, or to society in general ***.'" *State v. Adkins* (1973), 40 Ohio App.2d 473, 475, 69 O.O.2d 416, 417, 320 N.E.2d 308, 310. Such acts must be measured against the accepted standards of morality, honesty and justice prevailing upon the community's collective conscience, as distilled by a similarly principled judiciary. Accord *In re McGrath* (1982) 98 Wash.2d 337, 342, 655 P.2d 232, 234. And, where it is not a statutorily defined element of the charged offense, moral turpitude is a separate issue from the finding of guilt in a criminal proceeding. *Id.* at 341-342, 655 P.2d at 234. Thus, proof of a criminal conviction is generally not conclusive of the issue of moral turpitude, which requires consideration of all the circumstances surrounding the illegal conduct. *Disciplinary Counsel v. King* (1988), 37 Ohio St.3d 77, 78, 523 N.E.2d 857, 859.

**{¶ 10}** For these reasons, we cannot apply the *per se* rule relator urges and declare respondent in violation of DR 1-102(A)(3) simply because we have done so with respect to other attorneys convicted of felony theft offenses. See, *e.g*., *Disciplinary Counsel v. Pizzedaz* (1994), 68 Ohio St.3d 486, 828 N.E.2d 1359 (attorney committed five counts of theft in office, in violation of R.C. 2121.41, and one count of tampering with records, in violation of R.C. 2913.42), and

*Disciplinary Counsel v. Koury* (1990), 50 Ohio St.3d 150, 552 N.E.2d 941 (attorney convicted of grand theft, in violation of R.C. 2913.02[A][2]). Rather, where moral turpitude is disputed, an independent review of the circumstances underlying criminal convictions is necessary to determine if they manifest the requisite lack of social conscience and depravity beyond any established criminal intent. We have conducted that review in this case and agree with the board that respondent's crimes were not motivated by an unmitigated interest in personal financial gain at the expense of public or client coffers, which has been the hallmark of most theft-related DR 1-102(A)(3) violations in the past. Accordingly, relator's objection to the board's failure to find this misconduct is overruled.

{¶ 11} Relator also objects to the sanction recommended by the board, arguing that respondent should receive an indefinite suspension with no credit for the suspension imposed upon her felony convictions because (1) she is still on probation for her offenses, and (2) she has not yet made complete restitution. We agree and respondent concedes that she should serve out her probation period, which she anticipates to end on or about November 4, 1996, and make full restitution, including court costs, prior to reentering the practice of law. With respect to the imposition of an indefinite suspension, however, we are confident that respondent will never repeat her crimes and, like the board, consider further review of her character and professional competence unnecessary.

{¶ 12} Accordingly, we order that respondent be suspended from the practice of law in Ohio for a period of two years, and we grant her credit for the suspension of her license on November 12, 1993; however, respondent must complete her probation and pay full restitution, including court costs and interest at the judgment rate, prior to her reinstatement, and in no case shall she be reinstated prior to November 1, 1996. Costs taxed to respondent.

*Judgment accordingly*.

DOUGLAS, WRIGHT, RESNICK and PFEIFER, JJ., concur.

MOYER, C.J., F.E. SWEENEY and COOK, JJ., dissent.

_____

**COOK, J., dissenting.**

{¶ 13} With all due respect, I cannot agree with the majority's conclusion that respondent's conduct did not violate DR 1-102 (A)(3). The "Victim's Statement" in respondent's presentence report shows that in addition to receiving $1,193.41 from the false travel vouchers and $58 from state postage use, respondent charged $2,560.72 in long distance telephone calls and accepted $4,479.51 from falsifying overtime hours on time sheets.

{¶ 14} The respondent not only is charged with the responsibility to conduct herself in accordance with the high ideals of our profession, but also, as a public official, she had the additional trust imposed upon her by virtue of that office. Her conduct, therefore, ought to be judged to be doubly unbefitting. No indulgence by the disciplinary system is warranted and I would indefinitely suspend the respondent with no credit for time served and condition reinstatement upon the payment of full restitution, including court costs and interest at the judgment rate.

MOYER, C.J., and F.E. SWEENEY, J., concur in the foregoing dissenting opinion.

_____