[This decision has been published in *Ohio Official Reports* at 91 Ohio St.3d 86.]

OFFICE OF DISCIPLINARY COUNSEL *v*. KLAAS.

[Cite as *Disciplinary Counsel v. Klaas*, 2001-Ohio-276.]

*Attorneys at law—Misconduct—One-year suspension with six months of the suspension stayed with stayed part of suspension being a period of probation while working with a monitor—Secretly informing former client of upcoming drug raid—Engaging in illegal conduct involving moral turpitude—Engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation–Engaging in conduct adversely reflecting on fitness to practice law.*

(No. 00-1109—Submitted October 11, 2000—Decided February 21, 2001.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and Discipline of the Supreme Court, No. 98-99.

————————————

*Per Curiam.*

{¶ 1} On December 7, 1998, relator, Office of Disciplinary Counsel, filed a complaint with the Board of Commissioners on Grievances and Discipline of the Supreme Court against respondent, Monica Ann Hansen Klaas of Wooster, Ohio, Attorney Registration No. 0065095, alleging that she had violated the following Disciplinary Rules of the Code of Professional Responsibility: DR 1-102(A)(3) (engaging in illegal conduct involving moral turpitude), 1-102(A)(4) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation), 1-102(A)(5) (engaging in conduct prejudicial to the administration of justice), and 1-102(A)(6) (engaging in conduct that adversely reflects on the lawyer's fitness to practice law). Respondent answered, and the matter was heard by a panel of the board on March 31, 2000.

**{¶ 2}** The panel found that on August 20, 1997, respondent acquired information that the FBI and local law enforcement agencies would soon be conducting a drug raid in Wooster, Ohio. Upon receiving this information, respondent notified a former client about the upcoming drug raid. Because she suspected her former client to be a drug dealer, she advised him to "clean up his act" or to be "squeaky clean," which suggested to him that he dispose of any drugs in his possession before the drug raid. The raid occurred on August 21, 1997, and respondent's former client was arrested the following day. At that time the former client agreed to cooperate with law enforcement authorities and testify against respondent. As a result, respondent was convicted of attempted obstruction of justice, sentenced to six months in jail, and fined $1,000.

**{¶ 3}** The panel concluded that respondent's actions violated DR 1-102(A)(4), 1-102(A)(5), and 1-102(A)(6), but found that there was insufficient evidence to conclude that respondent violated DR 1-102(A)(3). In mitigation, the panel found that respondent cooperated with relator in its investigation. It also noted that she served time in jail for her conduct and while incarcerated performed community service for a legal aid society. The panel further found that respondent's actions did not involve any malicious intent but that she had simply exercised poor judgment. Observing that respondent was extremely remorseful, the panel recommended that she be suspended from the practice of law for one year with six months stayed, during which time she would be on probation. The panel also recommended that relator select a monitor to assist respondent in exercising proper judgment and maintaining professional distance from her clients. The board adopted the findings, conclusions, and recommendations of the panel.

**{¶ 4}** We adopt the findings and recommendations of the board. However, in addition to the board's conclusion that respondent violated DR 1-102(A)(4), 1-102(A)(5), and 1-102(A)(6), we conclude that respondent's conduct involved moral turpitude and violated DR 1-102(A)(3).

**{¶ 5}** In reaching this latter conclusion, we reject relator's position that a conviction for obstruction of justice or attempted obstruction of justice is a *per se* violation of DR 1-102(A)(3). We have previously stated that "proof of a criminal conviction is generally not conclusive of the issue of moral turpitude * * *. Rather, where moral turpitude is disputed, an independent review of the circumstances underlying criminal convictions is necessary to determine if they manifest the requisite lack of social conscience and depravity beyond any established criminal intent." *Disciplinary Counsel v. Burkhart* (1996), 75 Ohio St.3d 188, 191, 661 N.E.2d 1062, 1065. In other words, a conclusion that an attorney has violated DR 1-102(A)(3) is to be made on a case-by-case basis.

**{¶ 6}** We have held that acts of moral turpitude "must be measured against the accepted standards of morality, honesty, and justice prevailing upon the community's collective conscience." *Id.* Additionally, in determining whether the acts of an attorney constitute moral turpitude, we place special emphasis on the status of an attorney in relation to the public at large. Attorneys assume a "position of public trust" and are in a "position of responsibility to the law itself, and any disregard thereof by him is much more heinous than that by the layman." *Cincinnati Bar Assn. v. Shott* (1967), 10 Ohio St.2d 117, 131, 39 O.O.2d 110, 119, 226 N.E. 2d 724, 733.

**{¶ 7}** The circumstances in this case indicate that by her conduct respondent disregarded the standards of morality, honesty, and justice to which an attorney must adhere. Here, respondent attempted to undermine the effectiveness of a drug raid conducted by federal and local law enforcement officers by secretly informing a former client about the imminent raid. Respondent thereby disregarded her duty to faithfully uphold the law and attempted to use her status as an attorney to obstruct justice. This conduct did involve moral turpitude.

**{¶ 8}** Respondent is hereby suspended from the practice of law in Ohio for one year with six months of the suspension stayed. Additionally, the stayed part of

her suspension shall be a period of probation during which respondent shall work with a monitor chosen by relator to assist her in maintaining professional relationships with her clients.  Costs are taxed to respondent.

*Judgment accordingly.*

MOYER, C.J., DOUGLAS, RESNICK, F.E. SWEENEY, PFEIFER and LUNDBERG STRATTON, JJ., concur.

COOK, J., concurs in judgment.

_____

**COOK, J., concurring in judgment.**

{¶ 9} I agree with the sanction imposed by the majority and therefore concur in judgment.  I disagree, however, with the majority's conclusion that the respondent violated DR 1-102(A)(3) by engaging in illegal conduct involving "moral turpitude."  I would adopt the board's finding that there was insufficient evidence of a DR 1-102(A)(3) violation.

{¶ 10} Acts of "moral turpitude" are not precisely defined.  See *Disciplinary Counsel v. Burkhart* (1996), 75 Ohio St.3d 188, 190, 661 N.E.2d 1062, 1064-1065.  But we usually characterize them as involving "baseness, vileness, or the depravity in private and social duties which [a] man owes to his fellow man, or to society in general."  *Id.* (internal quotations omitted), quoting *State v. Adkins* (1973), 40 Ohio App.2d 473, 475, 69 O.O.2d 416, 417, 320 N.E.2d 308, 310.  The respondent's actions leading to her conviction for attempted obstruction of justice arguably fit this definition.  As the majority acknowledges, however, we undertake an independent review of the circumstances underlying a criminal conviction "to determine if they manifest the requisite lack of social conscience and depravity beyond any established criminal intent."  *Burkhart*, 75 Ohio St.3d at 191, 661 N.E.2d at 1065.

{¶ 11} The majority finds moral turpitude based on its finding that the respondent "attempted to undermine the effectiveness of a drug raid conducted by

federal and local law enforcement officers by secretly informing a former client about the imminent raid." The panel, however, made no such finding and instead recognized that the respondent "had no malicious intent and simply exercised very poor judgement * * *." The board concurred with the panel, apparently believing that what motivated the respondent was a desire to keep her client out of jail rather than an intent to undermine the entire large-scale drug raid. This interpretation of the respondent's conduct is certainly plausible: she tipped only one person out of approximately seventy who were arrested in the raid by federal and local law enforcement agencies.

{¶ 12} I agree that the sanction imposed today is warranted for violations of DR 1-102(A)(4), 1-102(A)(5), and 1-102(A)(6). But I would not depart from the board's conclusion that this misconduct did not present a violation of DR 1-102(A)(3).

_____

*Jonathan E. Coughlan*, Disciplinary Counsel, and *Kevin L. Williams*, Assistant Disciplinary Counsel, for relator.

*Geoffrey Stern,* for respondent.

_____