DECISION
Lawrence J. Rossiter, D.O., appellant, appeals an October 4, 2001 entry of the Franklin County Court of Common Pleas affirming the order of the Ohio State Medical Board ("the Board"), appellee, in which the Board permanently revoked appellant's license but stayed the revocation and suspended his license for an indefinite period, not less than ninety days, and established certain other conditions for reinstatement and probation.
Appellant has practiced medicine in Ohio since 1968, most recently as a solo general medical practitioner in Alliance, Ohio. In 1992, appellant discovered that an office employee had been failing to bill Medicaid patients for numerous years. After the employee quit, appellant attempted to handle the money flow and tax problems arising from such, but was mistaken in several respects, resulting in federal prosecution. In April 1998, appellant pled guilty to one felony count of making and subscribing a false individual income tax return in the United States District Court for the Northern District of Ohio. Appellant admitted that he willfully filed a false individual income tax return Form 1040 for 1992. He also pled guilty to one misdemeanor count of failure to file an employer's quarterly federal tax return. He admitted that as the sole shareholder, president, and treasurer of Sawburg Clinic, Inc., an Ohio corporation through which he provided medical services, he willfully failed to file a return of federal income taxes withheld from the wages of his employees. He was ordered to pay his tax obligations back in monthly payments, including a federal probationary supervision charge, pay a $2,000 fine, and complete six months of electronically monitored home confinement.
On June 14, 2000, the Board notified appellant that it proposed to determine whether to take disciplinary action against his certificate to practice osteopathic medicine and surgery in Ohio based upon the above convictions. The Board alleged that appellant's convictions violated: (1) R.C. 4731.22(B)(5), publishing a false, fraudulent, deceptive, or misleading statement; (2) R.C. 4731.22(B)(9), conviction of a felony; and (3) R.C. 4731.22(B)(13), conviction of a misdemeanor of moral turpitude. An administrative hearing was held before a hearing examiner on September 5, 2000. On October 18, 2000, the hearing examiner issued his report and recommendation. The hearing examiner recommended that appellant's license be permanently revoked, but that the revocation be stayed and his license be suspended indefinitely, for a minimum of ninety days, along with certain other terms and conditions for probation and reinstatement. Appellant filed objections and appeared before the Board on December 13, 2000. After the hearing, the Board adopted the hearing examiner's recommendation. Appellant appealed the Board's decision, and on October 4, 2001, the Franklin County Court of Common Pleas affirmed the Board's decision. Appellant appeals the lower court's judgment, asserting the following assignment of error:
 THE TRIAL COURT ABUSED ITS DISCRETION AND ERRED TO APPELLANT'S PREJUDICE WHEN IT FOUND THE ORDER OF THE STATE MEDICAL BOARD OF OHIO IS IN ACCORDANCE WITH LAW.
In an appeal from a Board order, a reviewing trial court is bound to uphold the order if it is supported by reliable, probative, and substantial evidence, and is in accordance with law. Pons v. Ohio State Med. Bd. (1993), 66 Ohio St.3d 619, 621; R.C. 119.12. Reliable, probative, and substantial evidence has been defined as follows:
 (1) "Reliable" evidence is dependable; that is, it can be confidently trusted. In order to be reliable, there must be a reasonable probability that the evidence is true. (2) "Probative" evidence is evidence that tends to prove the issue in question; it must be relevant in determining the issue. (3) "Substantial" evidence is evidence with some weight; it must have importance and value. Our Place, Inc. v. Ohio Liquor Control Comm. (1992), 63 Ohio St.3d 570, 571.
However, an appellate court's review is even more limited than that of the trial court. Pons, supra. While it is incumbent on the trial court to examine the evidence, the appellate court is to determine only if the trial court abused its discretion, i.e., being not merely an error of judgment, but perversity of will, passion, prejudice, partiality, or moral delinquency. Id. Absent an abuse of discretion on the part of the trial court, a court of appeals may not substitute its judgment for those of the medical board or a trial court. Id. Instead, the appellate court must affirm the trial court's judgment. Id.
In Pons, the Ohio Supreme Court held:
 Moreover, when reviewing a medical board's order, courts must accord due deference to the board's interpretation of the technical and ethical requirements of its profession. The policy reason for this was noted in Arlen v. State (1980), 61 Ohio St.2d 168, 173, 15 O.O.3d 190, 194, 399 N.E.2d 1251, 1254-1255: "'* * * The purpose of the General Assembly in providing for administrative hearings in particular fields was to facilitate such matters by placing the decision on facts with boards or commissions composed of [people] equipped with the necessary knowledge and experience pertaining to a particular field. * * *'" Id. at 621-622, quoting Farrand v. State Med. Bd. [1949], 151 Ohio St. 222, 224, 39 O.O. 41, 42, 85 N.E.2d 113, 114.
Therefore, absent an abuse of discretion of the trial court, this court must affirm the trial court's judgment. On questions of law, however, the common pleas court does not exercise discretion and our review is plenary. Univ. Hosp., Univ. of Cincinnati College of Medicine v. State Emp. Relations Bd. (1992), 63 Ohio St.3d 339, paragraph one of the syllabus.
We will first address appellant's argument that the Board's order was not in accordance with the law when it found that his misdemeanor conviction for failing to file one quarterly withholding Form 941 in 1994 constituted a conviction of a misdemeanor of "moral turpitude" under R.C. 4731.22, which provides, in pertinent part:
 (B) The board, by an affirmative vote of not fewer than six members, shall, to the extent permitted by law, limit, revoke, or suspend an individual's certificate to practice, refuse to register an individual, refuse to reinstate a certificate, or reprimand or place on probation the holder of a certificate for one or more of the following reasons:
* * *
 (13) A plea of guilty to, a judicial finding of guilt of, or a judicial
 finding of eligibility for intervention in lieu of conviction for, a misdemeanor involving moral turpitude[.]
Acts of moral turpitude, although not subject to exact definition, Cincinnati Bar Assn. v. Shott (1967), 10 Ohio St.2d 117, 130, are characterized by "`baseness, vileness, or the depravity in private and social duties which man owes to his fellow man, or to society in general * * *.'" Disciplinary Counsel v. Burkhart (1996), 75 Ohio St.3d 188, 191
quoting State v. Adkins (1973), 40 Ohio App.2d 473, 475. This court has before found that moral turpitude is generally defined as an "'[a]ct or behavior that gravely violates moral sentiment or accepted moral standards of [the] community and is a morally culpable quality held to be present in some criminal offenses as distinguished from others. * * *' Black's Law Dictionary (6 Ed. 1991) 698." Davidson v. State Med. Bd. of Ohio (May 7, 1998), Franklin App. No. 97APE08-1036, unreported. Such acts must be measured against the accepted standards of morality, honesty, and justice prevailing upon the community's collective conscience, as distilled by a similarly principled judiciary. Burkhart, supra. Proof of a criminal conviction is generally not conclusive of the issue of moral turpitude, which requires consideration of all the circumstances surrounding the illegal conduct. Id., citing Disciplinary Counsel v. King (1988), 37 Ohio St.3d 77, 78. Rather, where moral turpitude is disputed, an independent review of the circumstances underlying criminal convictions is necessary to determine if they manifest the requisite lack of social conscience and depravity beyond any established criminal intent. Id.
Given the above as guidelines, under the circumstances of this particular case, we find appellant's misdemeanor convictions did not constitute a misdemeanor of "moral turpitude." The Board found appellant's misdemeanor conviction involved "moral turpitude," citing Dayton Bar Assn. v. Lewis (1999), 84 Ohio St.3d 517 . The trial court agreed with the Board's finding, citing In the Matter of Samblanet (Oct. 19, 1982), Stark App. No. 5916, unreported, and State Bd. of Chiropractic Examiners v. Bisbocci (Nov. 1, 1990), Belmont App. No. 90-B-3, unreported. However, we find the present facts dissimilar to those in the cited cases. In Samblanet, the court affirmed the Board's decision to deny a doctor's application to renew his license to practice medicine after the doctor was found guilty of three counts of failure to file income tax returns, fined $15,000, and sentenced to three concurrent one-year terms of imprisonment. With no analysis or citations, the trial court concluded that one who is convicted of failing to file income tax returns as required by federal law is guilty of a crime of moral turpitude. However, in the present case, appellant's offense was based upon his failure to file only a single quarterly withholding form regarding his employees, unlike in Samblanet, in which the doctor failed to file returns for three years. Further, the doctor in Samblanet continued to practice medicine for five years after his license had expired. No similar aggravating facts such as this are involved in the present case. We find the violations and underlying facts in Samblanet to be more flagrant and serious than those in the present case, so as to render its determination regarding "moral turpitude" inapposite.
In the other case cited by the trial court, Bisbocci, a chiropractor pled guilty in federal court to a misdemeanor charge of failure to file a federal income tax return for one year, and the Ohio State Board of Chiropractic Examiners found the chiropractor guilty of violating R.C.4734.10(A), committing a misdemeanor involving moral turpitude. However, in upholding the agency's finding that the misdemeanor involved "moral turpitude," the appellate court partially based its finding upon the fact that the failure to file centered around monies the doctor had received as part of his involvement in the transportation of cocaine. In the present case, appellant did not seek to avoid paying taxes due to any underlying criminal activity. Rather, the record indicates that, after an employee failed to bill for Medicaid payments for five years, appellant tried to handle the records and quarterly withholding taxes on his own. The record further indicates that appellant failed to file the quarterly withholding form because he could not afford to pay the amount in full and he erroneously assumed he could not defer or partially pay his quarterly withholding obligations. He discovered later that he was required to file the form and could have likely arranged a payment schedule with the Internal Revenue Service ("IRS"). Because appellant's underlying circumstances in the present case are less egregious, we find Bisbocci distinguishable from the present case.
In Lewis, cited by the Board, an attorney filed a personal Chapter 13 bankruptcy case in May 1996. The attorney, who had failed to file federal, state, and local tax returns for the years 1991 through 1996, testified before the bankruptcy trustee that he had received extensions to file from the tax authorities. He then failed to comply with the bankruptcy court's order to file the returns. The attorney later admitted that he had received no extensions to file tax returns. The Ohio Supreme Court affirmed the decision of the Board of Commissioners on Grievances and Discipline of the Supreme Court, finding that, with respect to the counts relating to the failure to file tax returns, the attorney had violated DR 1-102(A)(3), engaging in conduct involving moral turpitude. However, the Ohio Supreme Court's decision specifically noted that it took into consideration the attorney's disregard of the bankruptcy judge's order to file the tax returns after the attorney lied to the judge about having an extension. No additional circumstances such as these are factors in the present case. Further, the attorney in Lewis failed to file federal, state, and local returns for five years, while appellant's misdemeanor conviction involved one withholding filing for one quarter. Thus, we find Lewis distinguishable.
We have reviewed several cases that specifically discuss "moral turpitude" within the context of willful tax evasion, and they have persuaded us that appellant's misdemeanor conviction, when coupled with the underlying facts, does not constitute a misdemeanor conviction involving "moral turpitude." In Toledo Bar Assn. v. Stichter (1985),17 Ohio St.3d 248, an attorney was found guilty of having willfully failed to file income tax returns for three years, which constituted misdemeanors. The Ohio Supreme Court agreed with the Toledo Bar Association in finding that such misdemeanor violations did not constitute engaging in conduct involving moral turpitude under DR 1-102(A)(3), noting that the attorney realized the gravity of his offense and demonstrated a willingness to fully cooperate with the IRS.
In Dayton Bar Assn. v. Prear (1964), 175 Ohio St. 543, an attorney was convicted of willfully and knowingly failing to file a federal income tax return for three years, and the attorney admitted such before the bar association. The Ohio Supreme Court found that the conviction, in itself, of an attorney willfully and knowingly filing a false and fraudulent income tax return was not conclusive proof of the commission of an act involving moral turpitude. A review of the similar cases in other jurisdictions led the Ohio Supreme Court to conclude that each of the cases was considered individually upon its merits, including the mitigating circumstances involved, the previous standing and record of the attorney involved, and the court's appraisal of his future conduct in light of his past record.
In Cincinnati Bar Assn. v. Leroux (1968), 16 Ohio St.2d 10, the Ohio Supreme Court also found that the failure to file federal income tax returns constituting a misdemeanor did not necessarily involve moral turpitude. The Ohio Supreme Court stated that whether a charge based upon a willful omission to file income tax returns (for which the explanations offered may include physical or emotional illness, family problems, and economic problems) involves moral turpitude, must necessarily turn on the particular circumstances of each case. Id., citing Prear, supra. The Ohio Supreme Court explained that while the classification of a misdemeanor does not control the determination of whether moral turpitude is involved, it does indicate that Congress did not consider the offense serious enough to be made a felony.
The Ohio Supreme Court in Leroux cited several circumstances that it considered in finding no moral turpitude was involved. There was evidence that there was no attempt on the part of the attorneys to evade income taxes. The attorneys also cooperated fully with IRS agents. There was no indication that the records maintained were either inadequate or deceptive. Further, there was considerable evidence that the reputation and competence of the attorneys ranged from good to very good. The Ohio Supreme Court explained that openness and remorse alone will not excuse an offense which is clearly reprehensible, but may be considered, with other mitigating circumstances, in evaluating a difficult borderline case.
Reviewing the above decisions, we believe appellant's misdemeanor offense under the circumstances of the present case did not rise to the level of "baseness, vileness, or the depravity in private and social duties which man owes to his fellow man, or to society in general * * *." Burkhart, supra, at 191. As explained above, appellant believed that because he did not have the ability to pay the money that should have been withheld, he thought he would break the law if he filed the withholding forms without submitting payment at the same time, but later discovered that the quarterly filings are required and a payment schedule may be arranged with the IRS. Further, appellant fully cooperated with the IRS, agreeing to pay all of the taxes owed for 1991 through 1994 ($38,000), even though his plea with the federal government involved a tax deficiency of approximately $11,000.
Appellant's grave mistake, it would appear, was trying to solve his tax situation himself without first seeking competent professional advice. Appellant has indicated that he had no intention to defraud the government or make more money; rather, he made faulty guesses and assumptions about the tax system and his own tax problems. There is no evidence that appellant planned to permanently avoid his tax obligations, and there was also no indication that the bills and office records maintained by appellant were either inadequate or deceptive. The record also indicates that appellant is clearly remorseful about the situation and realizes his errors. He indicated that he did not want to make any excuses for his conduct and that he was the person responsible for making timely and accurate IRS filings. Appellant also presented letters from various doctors and community members attesting to his high moral and ethical values. He also presented a letter from his probation officer, who said appellant is very compliant and has a good attitude. For the foregoing reasons, we find that appellant's misdemeanor conviction, when considered in conjunction with the surrounding circumstances, was not one involving moral turpitude as contemplated by R.C. 4731.22(B)(13). Therefore, appellant's argument in this respect is well-taken, and that portion of the Board's order finding appellant violated R.C. 4731.22(B)(13) is reversed.
If a reviewing court finds that not all of the violations found by an administrative agency are supported by the evidence or in accordance with the law, the court has discretion to affirm the penalty as reasonable, to modify the penalty to make it appropriate for the remaining violations, or to remand the matter to the agency to fashion a new penalty. Ohio Real Estate Comm. v. Aqua Sun Invest., Inc. (1995), 101 Ohio App.3d 221, 226. We note that "the duty with respect to the penalty is one peculiarly within the discretion of the trier of the facts." Id., quoting Gooding v. Hearing Aid Dealers Fitters Licensing Bd. (Jan. 26, 1983), Montgomery App. No. 7934, unreported. Accordingly, in light of our finding that the Board's order relating to the misdemeanor conviction was not in accordance with the law, we remand the matter so the Board may reconsider the appropriate penalty in view of the modified judgment.
Appellant also argues in his assignment of error the Board's penalty violated his right to equal protection under the Fourteenth Amendment to the United States Constitution and Section 2, Article I, Ohio Constitution. He claims his penalty was vastly disparate from one recently given to another doctor by the Board. However, in light of our treatment of appellant's first argument and our remand of the matter to the Board for reconsideration of the penalty, this issue may be rendered moot by the Board's further action on remand and we decline to address it. See App.R. 12(A)(1)(c).
Accordingly, appellant's assignment of error is sustained in part and rendered moot in part. The judgment of the Franklin County Court of Common Pleas is reversed, and the matter is remanded to the Board for reconsideration of the appropriate penalty in light of our above finding with regard to appellant's misdemeanor conviction.
Judgment reversed and case remanded.
BRYANT and BOWMAN, JJ., concur.