RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2003 FED App. 0408P (6th Cir.)
File Name: 03a0408p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————

UNITED STATES OF AMERICA,
　　　　*Plaintiff-Appellee,*

　　*v.*　　　　　　　　No. 02-3678

JAMES L. BLASZAK,
　　　　*Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of Ohio at Cleveland.
No. 01-00432—Patricia A. Gaughan, District Judge.

Argued: September 12, 2003

Decided and Filed: November 18, 2003

Before: KENNEDY, GUY, and DAUGHTREY, Circuit
Judges.

———————

### COUNSEL

**ARGUED:** Jerome A. Milano, MILANO & CO., Rocky
River, Ohio, for Appellant. Linda H. Barr, UNITED
STATES ATTORNEY, Youngstown, Ohio, for Appellee.
**ON BRIEF:** Jerome A. Milano, Stacey M. B. Ganor,
MILANO & CO., Rocky River, Ohio, for Appellant. David

1

---

2　　*United States v. Blaszak*　　　　No. 02-3678

A. Sierleja, UNITED STATES ATTORNEY, Cleveland,
Ohio, for Appellee.

———————

### OPINION

———————

MARTHA CRAIG DAUGHTREY, Circuit Judge. The
defendant, James Blaszak, entered a conditional plea of guilty
to a single count charging him with selling testimony in a
pending civil case, in violation of 18 U.S.C. § 201(c)(3),
based on his agreement to testify on behalf of the plaintiff in
an antitrust action in exchange for $500,000. Blaszak
reserved the right to appeal the constitutionality of § 201(c)(3)
as applied to him, after he failed to convince the district court
that the statute impinged upon his First Amendment rights on
the grounds that it is vague and overbroad and that it denied
him due process under the Fifth Amendment by failing to
give reasonable notice of the prohibited conduct. The crux of
his argument on appeal is that he should not have been
charged under § 201(c)(3) in the absence of evidence that the
testimony he proposed to provide was, in fact, manufactured
or otherwise untruthful. Giving the statute its plain meaning,
we find no constitutional deprivation and affirm the
conviction.

## I. *PROCEDURAL AND FACTUAL BACKGROUND*

The facts in this case are not in dispute. Pertinent
information taken from the plea agreement entered into by the
defendant and the government indicates that defendant
Blaszak was at the time of these events a licensed attorney in
Ohio with primarily a real estate practice. In January 2000,
Blaszak contacted Dennis Steed, a vice president of RE/MAX
International, supposedly to discuss potential business
opportunities. At that time, RE/MAX was the plaintiff in an
antitrust case pending in federal court. Blaszak told Steed
that he would be willing to testify in the case regarding

information he possessed that he believed would be beneficial to RE/MAX. Blaszak demanded compensation in exchange for his testimony, including $500,000 from RE/MAX to set up a mortgage and title company, which Blaszak would then run, and a $5,000 monthly retainer for his legal services.

Blaszak's proposal was to testify concerning a taped telephone conversation and to offer as evidence a memorandum that he described as a "smoking gun," although he acknowledged that the memo might be judged inadmissible by the trial court due to privilege issues. Blaszak also described in detail the services he would render RE/MAX through the title and mortgage company, asserting that RE/MAX would benefit financially from the agreement.

RE/MAX officials referred this matter to the Cleveland Division of the FBI. FBI Special Agent Michael Bartholomew, acting under cover, was then introduced to Blaszak as a "can do" man for RE/MAX. Bartholomew met with Blaszak on March 16 and 31, 2000, and told Blaszak that RE/MAX did not need either a title or mortgage company or Blaszak's legal services but would be wiling to purchase the information Blaszak had relating to the antitrust case. The two agreed that RE/MAX would pay Blaszak $500,000 for his testimony. The terms of the agreement included a $50,000 down payment and a monthly retainer for legal services that Blaszak would purportedly render until the amount was paid in full.

At the second meeting, Bartholomew gave Blaszak the $50,000 down payment. Also at that meeting, Bartholomew asked Blaszak if he would also be willing to sell his testimony to the defendants in the antitrust case, explaining that neither side could then go to the authorities if each had made unlawful payments to Blaszak. Blaszak indicated that he had no desire to testify on behalf of the antitrust defendants, and he assured Bartholomew that he would testify truthfully on behalf of RE/MAX.

The government has offered no evidence that Blaszak was attempting to provide false testimony on RE/MAX's behalf. It is also not clear whether the information he was to provide had any evidentiary value to the case. Neither side subpoenaed Blaszak during the litigation, and he never testified in the case.

Following the entry of his conditional guilty plea, Blaszak was sentenced to three years of probation and assessed a $5,000 fine.

## II. *DISCUSSION*

The statute under which defendant Blaszak was charged, 18 U.S.C. § 201(c)(3), provides as follows:

> Whoever directly or indirectly, demands, seeks, receives, accepts, or agrees to receive or accept anything of value personally for or because of the testimony under oath or affirmation given or to be given by such a person as a witness upon any such trial, hearing, or other proceeding, or for or because of such person's absence therefrom; shall be fined under this title or imprisoned for not more than two years, or both.

However, subsection (d) of the provision carves out certain exceptions to the general prohibition in subsection (c):

> [P]aragraphs (2) and (3) or subsection (c) shall not be construed to prohibit the payment or receipt of witness fees provided by law, or the payment, by the party upon whose behalf a witness is called and receipt by a witness, of the reasonable cost of travel and subsistence incurred and the reasonable value of time lost in attendance at any such trial, hearing, or proceeding, or in the case of expert witnesses, a reasonable fee for time spent in the preparation of such opinion, and in appearing and testifying.

## A. *First Amendment Challenge*

The defendant argues that § 201(c)(3) is an invalid restriction on First Amendment speech rights because it criminalizes behavior based on the content of the speech. In support of this contention, he points to the fact that the government may give a witness a reduced charge, a recommendation for leniency, a payment, or any other thing of value in exchange for testimony in a criminal prosecution that is favorable to the government without violating the statute, citing *United States v. Ware*, 161 F.3d 414, 418-19 (6th Cir. 1998) (holding that § 201(c)(3) does not apply to the government). *See also United States v. Anty*, 203 F.3d 305, 308 (4th Cir. 2000)(holding that interpreting § 201(c)(3) to apply to government prosecutors would "work obvious absurdity"). Thus, if a person wishes to be paid for truthful testimony, and that person is a witness for the government in a criminal case, Blaszak argues, then no violation of 18 U.S.C. § 201(c)(3) has occurred.[1] On the other hand, if a person wishes to be paid for truthful testimony in a civil case or on behalf of a criminal defendant, then a violation has

---

[1] There is, however, some disagreement as to whether the government may make cash payments to fact witnesses in exchange for truthful testimony. For example, *United States v. Harris*, 210 F.3d 165, 168 (3d Cir. 2000), while holding that the government is permitted to pay a fact witness for collecting evidence and testifying about what was found, explicitly declined to rule on whether § 201(c) would permit the "government to pay a witness solely or essentially for favorable testimony." *Id.*; *see also United States v. Condon*, 170 F.3d 687, 689 (7th Cir. 1999). This circuit has not dealt with this specific question, but has instead joined with several other circuits in holding that § 201(c)(3) does not apply to the government under the traditional rule that a statutory reference to "whoever" or "any person" includes government agents unless application of the statute would "deprive the sovereign of a recognized or established prerogative title or interest" or would "work obvious absurdity." *Nardone v. United States*, 302 U.S. 379, 383-84 (1937); *see also United States v. Ware*, 161 F.3d 414, 420 (6th Cir. 1998) (finding the *Nardone* rule applicable to § 201(c)). Of course, the question of whether the government may make cash payments to fact witnesses purely for testimony is not at issue in this case.

occurred. Blaszak contends, therefore, that the statute promotes a "content-based" restriction on speech in violation of the First Amendment.

A statute which by its terms distinguishes favored speech from disfavored speech based on the ideas or views of the witness is considered content-based and thus unconstitutional. *See Turner Broadcasting System, Inc. v. FCC*, 512 U.S. 622, 643 (1994). However, "laws that confer benefits or impose burdens on speech without reference to the ideas or views expressed are in most instances content neutral." *Id.* In our view, § 201(c)(3) is just such a statute – it does not discriminate based on the content of speech but, instead, prohibits the conduct of seeking or accepting monetary compensation, beyond reimbursement of reasonable expenses, in exchange for testimony.

The case on which the defendant primarily relies is easily distinguished. In *Hoover v. Morales*, 164 F.3d 221, 223-24 (5th Cir. 1998), the Fifth Circuit struck down two state university policies that prohibited university professors from working as consultants or expert witnesses against the state. The court found that both provisions were content-based restrictions on speech because they protected a professor who testified on behalf of the state but punished one who acted on behalf of an opposing party. *Id.* at 227. The defendant in this case argues that § 201(c)(3) is similar, in that it allows someone to be paid for testifying on behalf of the state but not on behalf of an opposing party. His reliance on *Hoover* is misplaced, however, because the provisions at issue in that case targeted different conduct than that targeted by § 201(c)(3). In *Hoover*, the professors were prevented from *testifying* – clearly a limitation on their free speech rights. Section 201(c)(3), on the other hand, does nothing to prevent a witness from testifying; it simply prohibits a witness from demanding or accepting *payment* in exchange for that testimony. Section 201(c)(3) criminalizes compensation "for or because of" testimony, regardless of its content and, therefore, does not implicate the First Amendment.

## B. *Fifth Amendment Challenge*

### 1. *Fair Warning*

The defendant argues that § 201(c)(3) does not give fair warning of prohibited conduct and therefore violates his Fifth Amendment due process rights. Although citizens are generally presumed to know the content of the law, one of the basic tenets of due process jurisprudence is that citizens be afforded fair notice of precisely what conduct is prohibited. *United States v. Baker*, 197 F.3d 211, 218-19 (6th Cir. 1999); *Lambert v. California*, 355 U.S. 225, 228 (1957). If a statute is "so technical or obscure that it threatens to ensnare individuals engaged in apparently innocent conduct," notice will not be presumed. *Baker*, 197 F.3d at 219.

We examine three issues when faced with a "fair warning" constitutional challenge. First, we must determine whether the statute "forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application." *United States v. Lanier*, 520 U.S. 259, 266 (1997) (internal quotation marks omitted). Next, we apply the cannon of strict construction, or the rule of lenity, which requires fair warning of the prohibited conduct and under which we must resolve any ambiguity in a criminal statute by applying it only to the conduct clearly described in the statute. *Id.* Finally, due process does not permit application of a novel construction of a criminal statute "to conduct that neither the statute nor any prior judicial decision has fairly disclosed to be within its scope." *Id.* The "touchstone" behind all of these concerns is an examination of the statute to determine whether, either on its face or as construed, the provision in question "made it reasonably clear at the relevant time that the defendant's conduct was criminal." *Id.* at 267.

Here, the argument is that the statute did not put the defendant on notice that it prohibited the sale *of truthful* testimony, because there are no reported cases, in this or other

jurisdictions, sustaining a conviction for demanding payment in exchange for truthful testimony under § 201(c)(3). There is, however, at least one federal district court that has held that the statute does not apply to truthful testimony. *See Golden Door Jewelry Creations, Inc. v. Lloyds Underwriters*, 865 F.Supp. 1516, 1523-24 (S.D. Fla. 1994). *Golden Door* involved payment by Lloyds of London to fact witnesses in exchange for information and testimony regarding a robbery. *Id.* at 1519-21. The court in *Golden Door* considered the question of whether these payments ran afoul of § 201(c)(2), which, as the companion subsection to § 201(c)(3), prohibits offering or promising something of value in exchange for testimony. The court acknowledged that "the plain language of [§ 201(c)(2)] does not distinguish between truthful or untruthful testimony" and that "the legislative history [of the statute] is silent on whether Congress intended to make such a distinction." *Id.* at 1523. Nevertheless, the *Golden Door* court held that, under *United States v. Moody*, 977 F.2d 1425 (11th Cir. 1992), it was constrained to find that § 201(c) did not apply to truthful testimony. *Golden Door*, 865 F.Supp. at 1523-24. We conclude, however, that *Golden Door* relied on dicta in *Moody*,[2] that such reliance was misplaced, and that, in any event, the opinion is neither controlling precedent in this circuit nor, in our judgment, does it constitute persuasive authority.

---

[2] *Moody* was a challenge to § 201(c) on the grounds that it was unconstitutionally vague and overbroad. The defendant in *Moody* paid a witness for completely fabricated testimony and promised money to another witness for similar testimony. *Moody*, 977 F.2d at 1422. On appeal, Moody argued that § 201(c)(2) is overbroad and vague because it does not expressly require evil intent or even that the testimony is false. The court rejected this constitutional challenge, finding that "[g]iving something of value 'for or because of' a person's testimony obviously proscribes a bribe for false testimony; persons of ordinary intelligence would come to no other conclusion." *Id.* at 1425. As the district court below pointed out, the only testimony at issue in *Moody* was indisputably false. *Moody* held only that it was clear that § 201(c) encompassed false testimony, not that it could not also reach truthful testimony.

Moreover, our own circuit precedent suggests a different conclusion. In *United States v. Donathan*, 65 F.3d 537 (6th Cir. 1995), we were asked to decide whether a conviction under § 201(b)(4) required the government to prove that false testimony was given. Section 201(b)(4) is identical to § 201(c)(3), except that it requires that a demand for compensation be "corrupt" and that the compensation be received "in return for being influenced." 18 U.S.C. § 201(b)(4). Section 201(c)(3) is a lesser included offense of the bribery provision contained in § 201(b)(4) and carries a lesser penalty. *Donathan*, 65 F.3d at 540. Because *Donathan* held that § 201(b)(4) did not require that the government prove that the testimony the defendant agreed to give was false, we decline to read an additional falsity requirement into § 201(c)(3), which employs virtually the exact language of § 201(b)(4) in describing the type of testimony covered by the statute.

Section 201(c)(3) clearly prohibits demanding or accepting anything of value in exchange for testimony. Its meaning should be clear to a person of common intelligence because it is neither overly technical nor obscure. The defendant's conduct falls well within that prohibited by the statute, and no novel construction of the statute is required to apply it to this case. It is true that this statute is rarely used, especially regarding truthful testimony. Nevertheless, it strains credulity to argue that the defendant was not on notice that his conduct was unlawful. Moreover, although the standard is whether a person of common intelligence would understand his conduct to be prohibited, we find it simply incredible that a licensed attorney and member of the Ohio bar would claim that he believed it lawful to accept $500,000 in exchange for non-expert truthful testimony. Finally, we note that the defendant's own actions belie his contentions in this regard. During his discussions with Bartholomew, the undercover agent, the defendant agreed that the payments needed to be made to appear "legitimate" and prepared a legal services contract as a cover for RE/MAX's monthly payments to him. Tellingly, Blaszak and Bartholomew also discussed the fact

that he could conceivably testify for both sides in the case and that neither side would then have any recourse because of the illicit nature of the payments.

### 2. *Vagueness and Overbreadth*

The defendant next argues that § 201(c)(3) is unconstitutionally vague because it does not pass the "ordinary intelligence" test by clearly establishing what constitutes prohibited activity. This argument is closely tied to the "fair warning" argument discussed above and also derives from general due process protections, although it involves a slightly different analysis.

A statute imposing criminal sanction can withstand constitutional scrutiny only if it "incorporates a high level of definiteness." *Belle Maer Harbor v. Charter Tp. of Harrison*, 170 F.3d 553, 557 (6th Cir. 1999); *see also Village of Hoffman Estates v. Flipside*, 455 U.S. 489 (1982). Normally, in making a vagueness analysis, we must first consider whether the statute "reaches a substantial amount of constitutionally protected conduct." *Belle Maer*, 170 F.3d at 557 (internal quotation marks omitted). Statutes not reaching constitutionally protected activity will therefore be evaluated "in light of the facts of the particular case at hand," rather than for their facial validity. *Id.* However, even when a statute does not threaten constitutionally protected activity, if it imposes criminal sanctions, a facial analysis is appropriate, *see id.*, and a "relatively strict test is warranted." *Springfield Armory, Inc. v. City of Columbus*, 29 F.3d 250, 252 (6th Cir. 1994).

A statute is unconstitutionally vague and violates the Due Process Clause if it fails to define the offense with sufficient definiteness such that ordinary people can understand the prohibited conduct or to establish standards to permit law enforcement personnel to enforce the law in a non-arbitrary, non-discriminatory manner. *See Kolender v. Lawson*, 461 U.S. 352, 357 (1983). The defendant's main contention

seems to be that § 201(c)(3) violates the first prong of this standard by failing to give fair notice that truthful testimony falls under the statute. But, for the reasons set out above, we have already held that the statute's plain language gives fair notice of the conduct it proscribes.

Finally, the defendant's overbreadth argument is directed to the second prong of the vagueness test. He contends that the statute is overly broad because it potentially encompasses payments to expert witnesses and preparation fees to fact witnesses that routinely occur in civil cases. The defendant does not claim, however, that he believed the payments he was to receive were for expert testimony or valid expenses incurred while preparing his testimony. He offers no evidence that law enforcement may confuse such legitimate payments with the illicit demand for $500,000 solely in exchange for testimony at issue in this case.

In any event, the analysis required for a challenge of overbreadth is not as strict as the vagueness test. The overbreadth doctrine is "an exception to traditional rules of standing and is applicable only in First Amendment cases in order to ensure that an overbroad statute does not act to 'chill' the exercise of rights guaranteed protection." *Leonardson v. City of East Lansing*, 896 F.2d 190, 195 (6th Cir. 1990) (citing *NAACP v. Button*, 371 U.S. 415, 433 (1963)). If a statute does not implicate the First Amendment, as § 201(c)(3) does not, then "a person to whom a statute may constitutionally be applied will not be heard to challenge that statute on the ground that it may conceivably be applied unconstitutionally to others, in other situations not before the Court." *Broadrick v. Oklahoma*, 413 U.S. 601, 610 (1973). Because § 201(c)(3) does not implicate the First Amendment, and because it may be constitutionally applied to defendant Blaszak, he is precluded from basing his overbreadth challenge on the possibility that the statute could be unconstitutionally applied to others.

## III. *CONCLUSION*

For the reasons set out above, we find that the application of the statute to the defendant's conduct in this case was constitutionally valid, and we therefore AFFIRM the judgment of conviction entered by the district court.