DAYTON BAR ASSOCIATION *v.* O'BRIEN.

[Cite as *Dayton Bar Assn. v. O'Brien,*
103 Ohio St.3d 1, 2004-Ohio-3939.]

(No. 2004–0085—Submitted May 11, 2004—Decided August 11, 2004.)

O'DONNELL, J.

{¶ 1} We are called upon to determine the appropriate sanction for an attorney who has told his client that the trial judge who presided over his criminal case and who was preparing to sentence him might be persuaded to grant a motion to withdraw the client's guilty plea if the client had the money "to afford that kind of treatment."

{¶ 2} A three-member panel of the Board of Commissioners on Grievances and Discipline recommended a six-month stayed suspension and upon review, the entire board recommended a public reprimand. We reject both recommendations. For the following reasons, the conduct in question warrants an indefinite suspension from the practice of law.

{¶ 3} Relator, the Dayton Bar Association, filed a complaint against respondent, attorney Daniel L. O'Brien, Attorney Registration No. 0070531, of Dayton, Ohio, after receiving a complaint from Kurtis Wallace, one of O'Brien's clients. O'Brien has been licensed to practice law in Ohio since 1999 and has previously represented Wallace in several legal matters. In the instant case, Wallace hired O'Brien to represent him in connection with criminal charges of identity theft and forgery before Montgomery County Court of Common Pleas Judge Michael T. Hall. O'Brien entered into plea negotiations with the prosecutor, and as a result, Wallace pled guilty to identity theft in exchange for the dismissal of the forgery charge. The court continued the matter for sentencing.

{¶ 4} On the day of sentencing, O'Brien met with the prosecutor in Judge Hall's chambers, where the judge informed them that he declined to impose a sentence of community control and that he intended to incarcerate Wallace. O'Brien left the chambers and informed Wallace of the judge's intentions. Upset with the pending sentence, Wallace fled the courthouse and failed to appear in the courtroom for sentencing.

{¶ 5} Several days later, Wallace contacted O'Brien by telephone and advised him that his brother could lend him $12,000 to pay for the withdrawal of his guilty plea. Wallace called O'Brien a second time and made a secret tape recording of their conversation, in which O'Brien stated that with $12,000, he (O'Brien) might be able to find someone to whom Judge Hall owed a favor who could persuade the judge to permit the withdrawal of Wallace's plea. A transcript of the recorded conversation reveals that O'Brien stated:

{¶ 6} "If you want a first class legal defense you gotta pay for a first class defense and if that means that I look around, then I say who does the judge owe a favor to, I'm walking around talking with the best of the best and I say I need you to come in on one favor, I need to withdraw the guilty plea and we need to show up there together and I need you to bring it. If I don't think I can bring it, I get somebody who does. You know what I mean? That's the kind of thing that you pay for and that way once he's got what we need done, we send him out, we come back in and we deal with the rest of it. I mean if you want high priced stuff that's how you get it and we've done big magic, big magic for people who had the money to be able to afford that kind of treatment."

{¶ 7} Wallace never paid any money to O'Brien; instead, he hired another attorney to represent him and he filed a grievance against O'Brien with the Dayton Bar Association. Wallace's new counsel provided the tape to Judge Hall, who had the case transferred. Following investigation, a panel of the Board of Commissioners on Grievances and Discipline heard O'Brien's case. The panel found that O'Brien violated DR 1–102(A)(5) and 9–101(C). DR 1–102(A)(5) provides that a lawyer shall not "[e]ngage in conduct that is prejudicial to the administration of justice." DR 9–101(C) states that "a lawyer shall not state or imply that he is able to influence improperly or upon irrelevant grounds any tribunal, legislative body, or public official." EC 9–4 states the rationale for DR 9–101(C): "Because the very essence of the legal system is to provide procedures by which matters can be presented in an impartial manner so that they may be decided solely upon the merits, any statement or suggestion by a lawyer that he can or would attempt to circumvent those procedures is detrimental to the legal system and tends to undermine public confidence in it."

{¶ 8} The panel recommended a six-month suspension of O'Brien's license to practice law with all six months stayed if O'Brien demonstrated no further disciplinary problems and if a mentor from the Dayton Bar Association monitored his caseload. The Board of Commissioners on Grievances and Discipline accepted the panel's findings of fact and conclusions of law but modified the recommended sanction to a public reprimand.

{¶ 9} We have previously imposed an indefinite suspension on attorneys for similar actions. In *Columbus Bar Assn. v. Benis* (1983), 5 Ohio St.3d 199, 5 OBR

415, 449 N.E.2d 1305, we indefinitely suspended an attorney who offered to influence a government official. He had intimated to the wife of a client that he might be able to use a member of the governor's staff to get clemency for her husband if she provided him with $10,000. We explicitly stated that a sanction of indefinite suspension did not constitute unduly harsh punishment in light of the seriousness of the conduct. Id. at 202, 5 OBR 415, 449 N.E.2d 1305.

{¶ 10} Further, we permanently disbarred an attorney who falsely represented to a client that he could bribe a federal judge presiding over his case. *Disciplinary Counsel v. Atkin* (1999), 84 Ohio St.3d 383, 704 N.E.2d 244. There, we were "particularly disturbed by respondent's suggestion that he could bribe United States District Judge George W. White, Jr. Representations of this kind deserve the severest of sanctions. * * * Suggestions by an attorney, however untrue, that a judge might be bribed weaken the public's respect for the judicial system and the faith of the people in a rule of law over men, and are intolerable." Id. at 385, 704 N.E.2d 244.

{¶ 11} In another matter, we indefinitely suspended an attorney for telling his client that if the client paid him $2,500, the attorney would pay other persons who, in turn, would use their influence to obtain shock probation for the client. *Ohio State Bar Assn. v. Consoldane* (1977), 50 Ohio St.2d 337, 4 O.O.3d 477, 364 N.E.2d 279. When called before the board, the attorney claimed that he had never intended to use the money as a bribe; rather, he said that he had fabricated the story as a means to secure payment of his fee for past services. ·We commented that the serious nature of the violations warranted the indefinite suspension of Consoldane's license to practice law. Id. at 340, 4 O.O.3d 477, 364 N.E.2d 279.

{¶ 12} Thus, we have repeatedly stressed our disdain for any statements by an attorney that imply the corruptibility of the judicial system or that the attorney can improperly influence a judicial officer. We have consistently imposed severe sanctions on attorneys who choose to engage in such misconduct. This case warrants a similar sanction. The board's recommendation of a public reprimand fails to consider the seriousness of O'Brien's conduct. His statements expressly suggested corruption in the court system, impugned the integrity of the judiciary, and maligned the reputation of Judge Hall. It is irrelevant that O'Brien failed to collect any money from Wallace or never acted on his statements. The suggestion of improper influence to affect the outcome of a matter pending before Judge Hall constituted an egregious violation of the Code of Professional Responsibility and warrants a severe sanction.

{¶ 13} Lawyers are officers of the court and, as such, they must strive to uphold the integrity of judicial officers before whom they appear. By their oath, lawyers are charged with high ethical standards which, as professionals, they are

expected to uphold at all times. Lawyers who engage in errant behavior do so at their own peril. O'Brien eroded and impugned the integrity of a judicial officer and intimated to a client that, for $12,000, he could improperly influence the outcome of a criminal case; in so doing, he falsely represented the judicial process to be corrupt and thereby risked diminishing the public's perception of, and confidence in, the judiciary. Accordingly, he is hereby indefinitely suspended from the practice of law.

{¶ 14} Costs are taxed to respondent.

Judgment accordingly.

MOYER, C.J., RESNICK, LUNDBERG STRATTON and O'CONNOR, JJ., concur.

F.E. SWEENEY, J., dissents and would suspend respondent for one year.

PFEIFER, J., dissents and would suspend respondent for one year with six months stayed.

--------

Popp & Tuss and Mark A. Tuss, for relator.

Bieser, Greer & Landis, L.L.P., and David C. Greer, for respondent.