DISCIPLINARY COUNSEL v. BLASZAK.

[Cite as *Disciplinary Counsel v. Blaszak,*
104 Ohio St.3d 330, 2004-Ohio-6593.]

(No. 2004–1374—Submitted September 28, 2004—Decided December 15, 2004.)

———

Per Curiam.

{¶ 1} Respondent, James L. Blaszak of Westlake, Ohio, Attorney Registration No. 0018800, was admitted to the practice of law in Ohio in 1970. On June 4, 2002, we suspended respondent's license to practice pursuant to Gov.Bar R. V(5)(A)(3) (interim suspension upon notice of felony conviction) because he had been convicted of violating Section 201(c)(3), Title 18, U.S.Code, which prohibits the sale of witness testimony in a pending case. *In re Blaszak,* 95 Ohio St.3d 1478, 2002-Ohio-2496, 769 N.E.2d 395. See, also, *United States v. Blaszak* (C.A.6, 2003), 349 F.3d 881, in which the court of appeals affirmed his conviction.

{¶ 2} On August 12, 2002, relator, Disciplinary Counsel, charged that respondent's conviction constituted professional misconduct. A panel of the Board of Commissioners on Grievances and Discipline heard the cause, including the parties' comprehensive stipulations, and made findings of misconduct and a recommendation, all of which the board adopted.

## Misconduct

{¶ 3} The board found that respondent pleaded guilty, conditioned on the outcome of his appeal, to selling testimony, a violation of Section 201(c)(3), Title 18, U.S.Code, which provides:

{¶ 4} "Whoever * * * directly or indirectly, demands, seeks, receives, accepts, or agrees to receive or accept anything of value personally for or because of the testimony under oath or affirmation given or to be given by such person as a witness upon any such trial, hearing, or other proceeding, or for or because of such person's absence therefrom; shall be fined under this title or imprisoned for not more than two years, or both."

{¶ 5} The proscription against selling testimony, a felony, does not apply to "the payment or receipt of witness fees provided by law, or the payment, by the party upon whose behalf a witness is called and receipt by a witness, of the reasonable cost of travel and subsistence incurred and the reasonable value of time lost in attendance at any such trial, hearing, or proceeding, or in the case of expert witnesses, a reasonable fee for time spent in the preparation of such opinion, and in appearing and testifying." Section 201(d), Title 18, U.S.Code. The prohibition against giving value for testimony has also been held inapplicable to government solicitations of truthful testimony in furtherance of a criminal prosecution. *United States v. Ware* (C.A.6, 1998), 161 F.3d 414, 418–419.

{¶ 6} Respondent's conviction resulted after he offered to sell truthful testimony to RE/MAX International ("RE/MAX"), the plaintiff in a pending antitrust suit. Respondent believed at the time that he possessed information that would be very important, a "smoking gun," to RE/MAX's case, although the actual evidentiary weight of his testimony remains unclear. After respondent solicited RE/MAX to purchase his testimony, an FBI investigation ensued. A special agent posing as a RE/MAX representative met with respondent on two days in March 2000 and listened to respondent's incriminating proposals.

{¶ 7} Respondent initially offered to testify in return for $500,000, with which he wanted to finance a mortgage and title company to manage, and $5,000 per month for his continuing legal services. The undercover agent, however, told respondent that RE/MAX did not need his legal services. Respondent thus agreed to accept $500,000 for his testimony, with a $50,000 down payment to be

remitted at their second meeting. Respondent was charged with selling testimony when he took the $50,000 down payment.

{¶ 8} On appeal, respondent argued that "in the absence of evidence that the testimony he proposed to provide was, in fact, manufactured or otherwise untruthful," his conviction under Section 201(c)(3), Title 18, U.S.Code, violated his rights to due process and freedom of speech. *Blaszak,* 349 F.3d at 883. The court of appeals found no constitutional infringement and affirmed, though acknowledging that "[t]he government has offered no evidence that Blaszak was attempting to provide false testimony on RE/MAX's behalf" and that there were "no reported cases, in this or other jurisdictions, sustaining a conviction for demanding payment in exchange for truthful testimony under § 201(c)(3)." Id. at 886. In the process, the court rejected as unreliable *Golden Door Jewelry Creations, Inc. v. Lloyds Underwriters* (S.D.Fla.1994), 865 F.Supp. 1516, which held that accompanying Section 201(c)(2) (prohibiting a promise or offer of something of value in exchange for testimony) did not apply to truthful testimony. *Blaszak,* 349 F.3d at 886.

{¶ 9} Respondent was sentenced to three years of supervised probation, fined $5,000, and ordered to complete 500 hours of community service. He quickly completed the terms of his probation, and his probation was terminated more than one year early.

{¶ 10} The parties stipulated and the board found that respondent had violated DR 1–102(A)(5) (barring conduct prejudicial to the administration of justice) and 1–102(A)(6) (barring conduct that adversely reflects on the lawyer's fitness to practice law). The board also found a violation of DR 1–102(A)(4) (barring conduct involving fraud, deceit, dishonesty, or misrepresentation), concluding that despite the undercover agent's refusal of respondent's offered legal services, respondent negotiated a $500,000 sham contract for monthly "legal fee" installments as payment for his testimony. The board did not, however, find a violation of DR 1–102(A)(3) (barring illegal conduct involving moral turpitude). The board concluded that respondent's crime, which he had obviously committed for profit, did not manifest the "requisite lack of social conscience and depravity" or "unmitigated interest in personal financial gain at the expense of public or client coffers, which has been the hallmark of most theft-related DR 1–102(A)(3) violations in the past." *Disciplinary Counsel v. Burkhart* (1996), 75 Ohio St.3d 188, 191, 661 N.E.2d 1062.

## Sanction

{¶ 11} In recommending a sanction for this misconduct, the board considered the aggravating and mitigating features of respondent's case, finding that the mitigating factors far outweighed the aggravating factors. See Section 10 of the

Rules and Regulations Governing Procedure on Complaints and Hearings Before the Board of Commissioners on Grievances and Discipline ("BCGD Proc.Reg.").

{¶ 12} As mitigating, the board found that respondent, who had been in practice for over 30 years, has no prior disciplinary record. BCGD Proc.Reg. 10(B)(2)(a). The board was also convinced that respondent's conviction represented an isolated incident in an otherwise unblemished legal career. See *Toledo Bar Assn. v. Kramer* (2000), 89 Ohio St.3d 321, 323, 731 N.E.2d 643. Respondent also admitted his misconduct, reported his conviction to disciplinary authorities himself, and cooperated fully in the disciplinary process. BCGD Proc.Reg. 10(B)(2)(d). Moreover, he presented approximately 90 letters confirming his good character and integrity apart from the underlying events, with at least eight judges among the many attorneys, public officials, former clients, and friends who came to his defense.

{¶ 13} In addition, respondent had before his suspension from practice been active in the Ohio State Bar Association and the Lorain County Bar Association, where he had served on the executive committee, the ethics committee, and as chair of the real estate section. Respondent had served as the law director, as chair of the zoning board of appeals, and as vice-chair of the parks and recreation commission for Elyria. He had also taught real estate law at Lorain County Community College.

{¶ 14} The board found that these were just a few examples of respondent's long history of legal and volunteer work for his community in addition to his many years of practice as a real estate lawyer in northeast Ohio. Such charitable works and civic involvement are mitigating factors that weigh in an attorney's favor in determining the appropriate sanction for misconduct. *Cuyahoga Cty. Bar Assn. v. Hardiman,* 100 Ohio St.3d 260, 2003-Ohio-5596, 798 N.E.2d 369, ¶ 16. Moreover, respondent's sincere desire to return to the legal profession and his character references persuaded the board that the bench and bar would welcome him back.

{¶ 15} After his interim suspension in 2002, respondent took 120 classroom hours to apply for an Ohio real estate license. Because of his felony conviction, he needed a waiver under R.C. 4735.09 to be eligible to sit for the real estate licensing examination. The Ohio Department of Commerce Division of Real Estate & Professional Licensing granted the waiver, writing: "Based on the information and numerous references that you provided, * * * you have shown by preponderance of evidence that you are honest, truthful, and of good reputation."

{¶ 16} Also, notwithstanding his completion of 500 hours of community service under the terms of his probation, respondent has continued volunteering for the American Red Cross.

{¶ 17} As an aggravating factor, the board found that respondent's crime was motivated by self-interest and profit, adding that "the $50,000 check he accepted in the FBI sting obviously blinded him to the impropriety and illegality of the act." And although respondent acknowledged the wrongful nature of his conduct, the board had some reservations. See BCGD Proc.Reg. 10(B)(1)(g). At the panel hearing, respondent on occasion resisted admissions concerning whether he had at the time of his crime realized the illegitimacy of his conduct. He claimed that he had not realized that his negotiations were wrong and that he did not enter into them intending to commit a crime, preferring to call his conduct a terrible "lapse in judgment" or a "terrible mistake." According to the board, respondent seemed to believe, as he argued on appeal, that "there is something wrong with the federal statute rather than with his conduct." Because of this, the board shared the impression expressed by the federal district judge at respondent's sentencing, who said:

{¶ 18} "I have to tell you I am not convinced, very frankly, that you believe what you did was wrong. I believe you are sorry, but I am not convinced that you really believe what you did was wrong."

{¶ 19} On the other hand, the board also found that respondent was deeply remorseful and that he had paid a dear price for his misconduct on many levels— from his criminal sentence, to public embarrassment, to hurting his family, and to financial ruin, including having to file personal bankruptcy after his indictment. See BCGD Proc.Reg. 10(B)(2)(f). Again agreeing with the sentencing judge's observation, the board, like the federal district court, felt confident that respondent would never violate the law again, and that he "will and can make future contributions obviously to [his] family but also to society." Based on respondent's testimony, which appeared heartfelt, and the overwhelming volume of character references, the board further found that "this painful passage through the federal criminal process and the Ohio disciplinary system appears to have had a positive influence on the Respondent that would serve him and his future clients well if his license is reinstated."

{¶ 20} Relator recommended an indefinite suspension; respondent suggested a two-year suspension with credit for the time under suspension that he has already served. The board supported, as had the hearing panel, respondent's recommendation. Adopting this recommendation makes respondent immediately eligible to apply for reinstatement pursuant to Gov.Bar R. V(10)(A). Relator has not objected to the board's recommendation.

{¶ 21} Upon review, we agree that respondent violated DR 1–102(A)(4), 1–102(A)(5), and 1–102(A)(6) as found by the board. We further agree with the board's recommendation. Quoting the panel's report, the board explained:

{¶ 22} "The panel's recommendation is supported by analogous authority. For example, in *Disciplinary Counsel v. Smith,* 69 Ohio St.3d 475 [633 N.E.2d 1117] (1994), a federal public defender's conviction for theft of government property— for selling information—violated DR 1–102(A)(3), DR 1–102(A)(4) and DR 1–102(A)(6). The conviction was found to be an isolated incident. The Court rejected the Relator's recommendation of indefinite suspension and, instead, suspended respondent for two years with credit for time served under an interim suspension. Similarly, in *Disciplinary Counsel v. Burkhart,* 75 Ohio St.3d 188 [661 N.E.2d 1062] (1996), [an attorney's] conviction for theft in office and receiving stolen property violated DR 1–102(A)(4) and DR 1–102(A)(6). The Court rejected Relator's recommendation of an indefinite suspension, and instead ordered a two-year suspension with credit for interim suspension. The Court stated: '[W]e are confident that respondent will never repeat her crimes and, like the board, consider further review of her character and professional competence unnecessary.' Id. at 191 [661 N.E.2d 1062]."

{¶ 23} In accepting the recommended sanction, we acknowledge that we have imposed an indefinite suspension for professional misconduct involving attorneys who suggested that bribery could accomplish a certain result. *Dayton Bar Assn. v. O'Brien,* 103 Ohio St.3d 1, 2004-Ohio-3939, 812 N.E.2d 1263 (attorney indefinitely suspended for suggesting to client that judge would allow withdrawal of guilty plea for money); *Columbus Bar Assn. v. Benis* (1983), 5 Ohio St.3d 199, 5 OBR 415, 449 N.E.2d 1305 (attorney indefinitely suspended for offering to influence a member of the governor's staff to get clemency for a client's husband); and *Ohio State Bar Assn. v. Consoldane* (1977), 50 Ohio St.2d 337, 4 O.O.3d 477, 364 N.E.2d 279 (attorney indefinitely suspended for suggesting that he could obtain client's shock probation with a bribe). And we have disbarred attorneys for consummating this corruption. *Cleveland Bar Assn. v. Jurek* (1991), 62 Ohio St.3d 318, 581 N.E.2d 1356 (attorney's bribing of bond commissioner to avoid random judicial assignments warranted permanent disbarment); *Disciplinary Counsel v. DiCarlantonio* (1994), 68 Ohio St.3d 479, 628 N.E.2d 1355 (city attorney who received $15,000 for his part in changing fire ordinance was disbarred). See, also, *Disciplinary Counsel v. Atkin* (1999), 84 Ohio St.3d 383, 704 N.E.2d 244 (attorney disbarred for misrepresenting to client that presiding federal judge could be bribed, allegations that provoked an investigation and damaged the judge's reputation).

{¶ 24} In none of these cases, however, did the attorneys provide the overwhelming evidence of mitigation that respondent has presented here. The sheer volume of reference letters is impressive, but we are most moved by the extensive gratitude and appreciation these authors express for respondent's professional assistance in their lives and his achievements in the courts and community. There is little doubt that these authors knew of respondent's conviction, yet their

respect for his competence and integrity was undimmed. These testimonials, together with respondent's contrition, completion of his sentence, cooperation, the over two years his license has already been suspended, and his heretofore exemplary record of professional and community service convince us that respondent should be returned to the practice of law.

{¶ 25} Accordingly, respondent is hereby suspended from the practice of law in Ohio for two years; however, he is credited for the interim suspension that began on June 4, 2002. As of the date of this order, respondent is eligible to apply for reinstatement pursuant to Gov.Bar R. V(10)(A). Costs are taxed to respondent.

Judgment accordingly.

F.E. SWEENEY, PFEIFER, LUNDBERG STRATTON and O'DONNELL, JJ., concur.

MOYER, C.J., RESNICK and O'CONNOR, JJ., dissent.

---

MOYER, C.J., dissenting.

{¶ 26} I respectfully dissent from the sanction imposed on respondent by the majority. In view of respondent's unwillingness to fully acknowledge the wrongful nature of his conduct, I would not give him credit for time served during his interim suspension.

RESNICK and O'CONNOR, JJ., concur in the foregoing dissenting opinion.

---

Jonathan E. Coughlan, Disciplinary Counsel, and Brian Shinn, Assistant Disciplinary Counsel, for relator.

Mary L. Cibella, for respondent.